UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SARA DEVILDER,

    Plaintiff,

v.                                        Case No: 2:15-cv-421-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## ORDER

Plaintiff Sara Devilder seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.

### I. Issue on Appeal[1]

Plaintiff raises one issue on appeal: whether the Administrative Law Judge ("ALJ") properly weighed the opinion of Plaintiff's treating psychologist, Dr. Roxann Sangiacomo, M.D.

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

## II.    Procedural History and Summary of the ALJ's Decision

On September 5, 2012, Plaintiff protectively filed an application for a period of disability and DIB.  Tr. 137-44.  Plaintiff alleged a disability onset date of June 1, 2011 due to fibromyalgia, depression, and chronic fatigue syndrome.  Tr. 137, 155.  Her claim initially was denied on October 4, 2012 and upon reconsideration on December 4, 2012.  Tr. 73, 86.  Plaintiff requested and received a hearing before ALJ S. D. Schwartzberg on February 24, 2014 during which she was represented by an attorney.  Tr. 33-34.  Plaintiff and vocational expert Joyce Ryan testified at the hearing.  Tr. 33.  The ALJ issued an unfavorable decision on March 7, 2014.  Tr. 17-27.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  Tr. 19.  At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since June 1, 2011, the alleged onset date.  *Id.*  At step two, the ALJ found that Plaintiff "has the following severe combination of impairments: fibromyalgia, degenerative changes of the cervical and lumbar spine, obesity, attention deficit hyperactivity disorder, dermatotillomania, bipolar disorder, and anxiety disorder."  *Id.*  At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ."  Tr. 20.  The ALJ determined that Plaintiff had the RFC to:

perform light work,[2] except limited to: frequent postural activities (of climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling); occasional climbing ladders, ropes, and scaffolds; avoidance of concentrated exposure to hazards; simple, routine, repetitive work; occasional contact with coworkers and supervisors; and no public contact.

Tr. 21. Next, the ALJ found that Plaintiff is unable to perform any of her past relevant work as a medical practice office assistant, park recreation manager, retail business operator manager, and store laborer. Tr. 26. At step five, in considering Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff had acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy. Tr. 26. Thus, in considering Plaintiff's RFC, age, education, and work experience and relying on the VE testimony, the ALJ found that Plaintiff is capable of performing other work that exists in significant numbers in the national economy, namely a photocopy machine operator, laundry sorter, and mail room sorter. Tr. 27. Accordingly, the ALJ ruled that Plaintiff has not been disabled through the date of the decision. *Id.*

Plaintiff requested review of the ALJ's decision, which the Appeals Council denied on May 27, 2015. Tr. 1-5. Accordingly, the ALJ's March 7, 2014 decision is

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

the final decision of the Commissioner. Plaintiff filed an appeal in this Court on July 13, 2015. Doc. 1. Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review. Docs. 14, 15.

### III. Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The Eleventh Circuit has summarized the five steps as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158 (11th

Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery*, 979 F.2d at 837 (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner*, 2015 WL 1453364, at *2 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).

## IV. Discussion

Plaintiff argues that the ALJ erred when he failed to give appropriate weight to the opinion of Dr. Roxann Sangiacomo, Plaintiff's long term psychiatrist. Doc. 24 at 5-9. Dr. Sangiacomo treated Plaintiff for approximately ten years.[3] Tr. 36. On December 30, 2013, Dr. Sangiacomo completed a Medical Assessment of Ability to Do Work Related Activities relating to Plaintiff. Tr. 579-81. Dr. Sangiacomo opined that Plaintiff had a good[4] ability to relate to co-workers, deal with the public, and interact with supervisors; a fair[5] ability to follow work rules, function independently, and maintain attention/concentration, and; poor or no[6] ability to use judgment and deal with work stress. Tr. 579-80. She further opined that Plaintiff had a good ability to understand, remember, and carry out simple job instructions, and relate predictably in social situations; a fair ability to understand, remember, and carry out detailed but not complex job instructions, to maintain personal appearance, behave

---

[3] Plaintiff testified that she had started seeing Dr. Sangiacomo because of an attempted suicide in the year 2000. Tr. 36.
[4] "Good" is defined as "[a]bility to function in this area is limited but satisfactory." Tr. 579.
[5] "Fair" is defined as "[a]bility to function in this area is seriously limited, but not precluded." Tr. 579.
[6] "Poor or None" is defined as "[n]o useful ability to function in this area." Tr. 579.

in an emotionally stable manner, and demonstrate reliability; poor or no ability to understand, remember, and carry out complex job instructions. Tr. 580-81. In further describing Plaintiff's limitations, Dr. Sangiacomo wrote: "[Plaintiff] is intelligent but the [mental] illness causes [her] to exhibit impulsivity, mood swings, compulsive self-destructive behaviors with periods of poor insight and bad judgment." Tr. 580. Dr. Sangiacomo further opined that Plaintiff would not be able to manage and function in a work environment, that Plaintiff cannot manage her own funds due to a history of compulsive gambling, and that Plaintiff has non-suicidal self-injurious behavior. Tr. 581.

Plaintiff argues that the ALJ's rejection of Dr. Sangiacomo's opinion is inconsistent with the medical records. Doc. 24 at 8. Plaintiff contends that the ALJ's finding that Plaintiff would have moderate limitations with concentrating and engaging in social functioning "appears to be consistent with" Dr. Sangiacomo's opinion. *Id.* According to Plaintiff, however, the ALJ does not directly address Dr. Sangiacomo's opinion that Plaintiff would have poor or no ability to deal with work stress; and his rejection of this portion of the opinion is contrary to the medical record, and is in error. *Id.*

Under the Social Security regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ."

20 C.F.R. § 404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford*, 363 F.3d at 1159-60. If the opinion of a treating physician as to the nature and severity of a claimant's impairment is supported by acceptable medical evidence and is not inconsistent with other substantial evidence of record, the treating physician's opinion is entitled to controlling weight. SSR 96-2p; 20 C.F.R. § 404.1527(c). By contrast, if the ALJ does not afford controlling weight to a treating physician's opinion, she must clearly articulate the reasons for doing so. *Winschel*, 631 F.3d at 1179.

Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); *Hunter*, 808 F.3d at 822-23. "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241). Although the regulations require that the ALJ consider all factors set forth in 20 C.F.R. § 404.1527(c), the ALJ is not required to expressly address each factor so long as she demonstrates good cause to reject the opinion. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

In his opinion, the ALJ thoroughly discussed Plaintiff's alleged mental impairments. Tr. 23-26. He noted that Plaintiff received formal mental health treatment from Dr. Sangiacomo for diagnoses of attention deficit hyperactivity disorder, dermatotillomania, bipolar disorder, and anxiety disorder. Tr. 23. The ALJ further explained:

> [Plaintiff's] treatment record indicates that [she] was treated with prescribed medication but that she did experience periods of exacerbation during which she required medication changes to achieve symptom reduction. Despite these periods of exacerbation, the record documents that [Plaintiff] was improved with the use of medication and continuing treatment. Her primary care providers at Lee Physicians Group described [Plaintiff's] mental impairments as stable. [Plaintiff] denied suicidal ideation, and there is no record of inpatient psychiatric treatment. [Plaintiff's] mental health treatment records indicate that [she] was doing better with her medication regimen during most of 2013. It was noted that [Plaintiff] had less anxiety, that she had reduced her skin picking and that her mood and functioning were better. In October 2013, [Plaintiff] reported that she had went [sic] to a family reunion and that she was walking one hour a day six days a week with a friend. Although [Plaintiff] has difficulties in social interaction and in concentration, persistence, or pace, the record fails to establish greater than moderate limitations or difficulty in these areas. While [Plaintiff] experiences symptoms of mental impairment, the records show that she is able to communicate with others, act in her own interest, and perform most ordinary activities.

Tr. 23-24. Further, the ALJ specifically discussed Dr. Sangiacomo's opinion and each finding contained within it, including the limitation on inability to use judgment and deal with work stress. Tr. 24. Ultimately, the ALJ gave little weight to Dr. Sangiacomo's opinion because "it is not supported by medically acceptable clinical findings and diagnostic technique and is not consistent with the medical record," although the ALJ did not independently weigh each portion of the opinion. Tr. 25. Substantial evidence supports the ALJ's conclusion.

On June 15, 2011 Plaintiff saw Dr. Sangiacomo after she decided to quit her job. Tr. 368. She reported that she was not feeling "quite right." *Id.* Dr. Sangiacomo noted that Plaintiff was alert, oriented, pleasant, cooperative, a bit fatigued, and somewhat distracted and disinterested. *Id.* But, her insight and judgment were fair. Three months later, on September 14, 2011, Plaintiff reported doing well and her mood being okay. Tr. 369. She again appeared alert, oriented, and goal oriented. *Id.* Her skin looked good, with no outbreaks. *Id.* Her insight and judgment were adequate. *Id.*

Plaintiff returned to see Dr. Sangiacomo on February 29, 2012, at which time she reported she was not doing well. Tr. 370. Plaintiff started picking her face and was required to go to an urgent care to obtain antibiotics. *Id.* Dr. Sangiacomo noted that Plaintiff appeared distracted, somewhat fuzzy, and foggy. *Id.* She had moderate anxiety and dysphoria. *Id.* Plaintiff's self-attitude was diminished, but her insight and judgment were fair. *Id.* Dr. Sangiacomo changed Plaintiff's medications, and the following month, on March 29, 2012, Plaintiff reported that her sleep, energy, and appetite were improving. Tr. 371. Although Plaintiff continued to pick her skin, she was advised to continue to help her skin heal and follow good hygiene. *Id.* The mental status exam revealed a much more neutral mood, less dysphoria, and brighter affect. *Id.*

Plaintiff next saw Dr. Sangiacomo on May 31, 2012. Tr. 373. During this visit, Dr. Sangiacomo noted that Plaintiff "[has] had a terrible bout with picking her skin. Brings in photos of absolutely picking large areas, up to 3 inches in diameter,

raw." *Id.* Plaintiff reported, however, that her mood had been good, despite significant situational stress. *Id.* Plaintiff was not ruminating or perseverating about other things, and did most of the picking during her sleep at night. *Id.* Dr. Sangiacomo discussed with Plaintiff the behavioral component of the picking, and instructed Plaintiff to purchase white gloves and tape them on at night. *Id.* During this visit, Plaintiff's mental status exam revealed that she was alert, oriented, pleasant, cooperative, and nicely attired and groomed. *Id.* Her scars were healing, though still open. *Id.* She had no paranoia or looseness of association, her self-attitude was fair; her insight and judgment were developing. *Id.*

Three months later, on August 23, 2012, Dr. Sangiacomo noted that Plaintiff's mood had "not been too bad." Tr. 373. Plaintiff appeared alert, oriented, and goal directed. *Id.* She was pleasant, cooperative, in a reasonably neutral mood, and with no overt anxiety. *Id.* Dr. Sangiacomo noted that Plaintiff "interacts well, with good eye contact." *Id.* Her self-attitude and insight were fair; her judgment was developing. *Id.*

Three months later, however, on November 1, 2012, Plaintiff reported continued problems with picking her skin. Tr. 393. She was very overwhelmed, and reported increased anxiety and problems with attention, concentration, and memory. *Id.* Plaintiff reported that she had been lying to Dr. Sangiacomo for the previous six months. *Id.* Physical examination revealed that Plaintiff was alert and oriented, although somewhat rambling. Tr. 394. Plaintiff appeared overwhelmed. *Id.* Her mood was severely depressed and she had significant

anxiety.  *Id*.  However, there was no evidence of formal thought disorder, nor homicidal ideation or plan.  *Id*.  Her memory was grossly intact for remote and recent events, though somewhat patchy for immediate recall.  *Id*.  Her insight and judgment were fair to poor.  *Id*.  Her medications were adjusted, and Plaintiff showed improvement on her following visit on November 26, 2016.  Tr. 547.

During her November 26, 2012 visit, although Plaintiff reported still picking her skin, she said she was feeling about 60% better.  *Id*.  She also reported that she received "incredible" relief using Xanax every time she felt the urge to pick her skin.  *Id*.  The physical examination revealed that Plaintiff was alert, oriented, and goal oriented.  *Id*.  She was pleasant and cooperative, with underlying anxiety, but much less dysphoric.  *Id*.  There was no evidence of a formal thought disorder.  *Id*.  Her insight and judgment were "mildly impaired."  Tr. 548.

On January 21, 2013, Plaintiff reported reduced anxiety and improved mood, particularly with daily exercise.  Tr. 551.  Her mental status exam revealed that her mood was much brighter, her anxiety reduced, and she had reduced rumination and perservation.  Tr. 552.  There was no evidence of formal thought disorder and her memory was intact for remote, recent, and immediate recall.  *Id*.  Her fund of knowledge was adequate, commensurate with age and education.  *Id*.  Her insight and judgment were limited by the extent of her anxious thoughts.  *Id*.  Similarly, on March 4, 2013, Plaintiff reported that she had been functioning better.  Tr. 553.  Her mental status examination showed no difference from the previous visit with respect to her speech and fund of knowledge.  *Id*.  Although Plaintiff had mild

anxiety and rumination, and her vital sense and self-attitude had diminished, her insight and judgment appeared adequate.  *Id.*

Plaintiff continued to report improvement during her next visit, on May 6, 2013.  Tr. 555.  Plaintiff reported that she had experienced significant relief with her regimen in her compulsive skin picking.  Tr. 555.  The mental status examination revealed no difference from the prior visit with respect to her speech and fund of knowledge.  Tr. 556.  Her insight and judgment were limited by the extent of her anxious thoughts.  *Id.*

By July 16, 2016, Plaintiff reported that her skin was 90% cleared up.  Tr. 558.  The mental status exam revealed mild anxiety, no suicidal or homicidal ideation, plan, or intent, and no evidence of formal thought disorder.  Tr. 559.  Her thought processing and content were intact, and she had adequate fund of knowledge.  *Id.*  Moreover, her speech was normal, and her memory was intact.  *Id.*  Plaintiff's vital sense, self-attitude, insight, and judgment were adequate.  *Id.*  Dr. Sangiacomo's impression was that Plaintiff was much calmer, coping with stressors, and healing with picking.  *Id.*

On October 15, 2013, Plaintiff exhibited a depressed mood and mild anxiety due to situational stressors of the death of a family member and her husband's loss of employment.  Tr. 561.  Plaintiff reported walking with a friend for about one hour six times per week.  *Id.*  Her mental status exam appeared normal except that her vital sense and self-attitude were significantly diminished, but her insight and judgment appeared adequate.  Tr. 562.

By December 9, 2013, Plaintiff reported that her skin lesions had completely cleared up and she had not been doing any picking. Tr. 564. Dr. Sangiacomo noted this was admirable considering the fact that Plaintiff had undergone a hysterectomy the previous month. *Id.* During this visit, the mental status exam showed that Plaintiff had mild anxiety, which the doctor noted was "appropriate to ideation and situation." Tr. 565. Otherwise, the exam revealed no abnormal results. *Id.* Plaintiff's vital sense, self-attitude, insight and judgment appeared adequate. *Id.*

As the Commissioner correctly points out, the above record evidence does not reflect an inability to tolerate work stress. Although Plaintiff exhibited temporary changes in her mood and temporary increases in skin picking behavior because of situational stressors, these scenarios do not support a conclusion that Plaintiff has no ability to use judgment and deal with work stress.[7] Dr. Sangiacomo's mental status examinations generally appeared normal, with Plaintiff's insight and judgment either improving or adequate. Moreover, at times Plaintiff reported doing well despite the situational stressors. *See* Tr. 373, 558-59, 564.

The remainder of the records further counters Dr. Sangiacomo's opinion. For example, Dr. Phyllis Neef, Plaintiff's primary care physician, noted several times from mid-2012 through 2013 that Plaintiff was stable with her psychiatric treatment. Tr. 380, 385-86, 500, 516-17, 525-26, 534-35. Additionally, physical examinations by Dr. Kenneth Galang, who primarily treated Plaintiff's fibromyalgia, consistently

---

[7] Although in her testimony Plaintiff attributed her difficulty dealing with work stress to her compulsive behavior of picking her skin to the point of infection (Tr. 39), the ALJ found Plaintiff's statements not credible to the extent alleged. Tr. 22, 24. Plaintiff does not argue against this finding.

showed normal insight, judgment, orientation, memory, mood and affect. Tr. 412, 415, 418, 421, 424, 427, 430, 433, 436, 439, 442, 445, 448, 451, 454-55, 460-61, 585, 589, 593, 597, 605, 613, 617, 621, 625, 629, 632, 636, 639. This evidence does not bolster Dr. Sangiacomo's opined limitations.

Upon a review of the record, the Court concludes that the ALJ did not err in reducing the weight he gave to Dr. Sangiacomo's opinion, as the record reflects good cause for doing so, and the ALJ articulated his reasons for doing so. *See e.g.*, *Crawford*, 363 F.3d 1155; *Phillips*, 357 F.3d at 1241. To the extent Plaintiff argues that the ALJ erred by not separately weighing certain portions of the opinion, and separately articulating his reasons for doing so, this argument is without merit. "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer*, 395 F.3d at 1211. In any event, it is clear that the ALJ rejection of the portion of Dr. Sangiacomo's opinion that Plaintiff has poor or no ability to use judgment and deal with work stress was based on substantial evidence, and thus, any error was harmless. *See Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671, 672 (11th Cir. 2014).

## V. Conclusion

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  The decision of the Commissioner is **AFFIRMED**.

2.  The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 13th day of September, 2016.

                                                                             CAROL MIRANDO
                                                                  United States Magistrate Judge

Copies to:
Counsel of record